Case No. 23-10181

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

**JOSE R. ROSADO**

Appellant-Plaintiff,

v.

**CARLOS DEL TORO, SECRETARY, U.S. DEPARTMENT OF THE NAVY**

Appellee-Defendant.

**On Appeal from the United States District Court for the
Middle District of Florida
Jacksonville Division
3:19-CV-01428-MMH-PDB**

**APPELLANT'S BRIEF**

**Attorney for Appellant-Plaintiff:**
**Archibald J. Thomas, III**
**Florida Bar No. 231657**
**Law Offices of Archibald J. Thomas, III, P.A.**
**1205 Beach Blvd., Suite 10**
**Jacksonville, Florida 32250**
**Telephone: (904) 674-2222**
**Email: thomaslawfirm1@gmail.com**

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

COMES NOW Appellant-Plaintiff Jose Rosado ("Rosado" or "Appellant") and, pursuant to Rule of the United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit Rule") 26.1, certifies that, to the best of Rosado's knowledge, the following is a complete list of the persons and entities that have an interest in the outcome of the above-captioned case:

Barksdale, Patricia D., U.S. Magistrate Judge, Middle District of Florida

Carter, Ronnie S., Asst. U.S. Attorney, Counsel for Defendant-Appellee

Cunningham, Collette B.,Asst. U.S. Attorney Counsel for Defendant-Appellee

Handberg, Roger B., U.S. Attorney, Counsel for Defendant-Appellee

Howard, Marcia Morales, U.S. District Judge, Middle District of Florida

Law Offices of Archibald J. Thomas, III, PA, Counsel for Plaintiff-Appellant

Rosado, Jose R., Plaintiff-Appellant

Siekkinen, Sean, Asst. U.S. Attorney, Counsel for Defendant-Appellee

Thomas, III, Archibald J., Counsel for Plaintiff-Appellant

Toro, Carlos Del, Secretary, U.S. Department of the Navy

U.S. Department of the Navy

Rosado certifies that, to the best of Rosado's and Counsel's knowledge, no

2

publicly traded company or corporation has an interest in the outcome of this case or appeal.

# TABLE OF CONTENTS

Table of Contents                                                                                          4

Table of Authority                                                                                          5

Statement Regarding Oral Argument                                                            10

Statement of Jurisdiction                                                                              11

I. Statement of Issues on Appeal                                                                12

II. Statement of the Case                                                                             13

    A. Course of the Proceedings and Disposition in District Court      13

    B. Statement of Facts from the Record Below                              14

III. Statement of the Standards of Review                                                  34

IV. Summary of Arguments                                                                         35

V. Argument and Citations of Authority                                                     36

    A. The District Court erred when determining that Rosado          36
    failed to establish a *prima facie* case

    B. The District Court erred when evaluating the                          47
    evidence of retaliation47

VI. Conclusion                                                                                            52

Certificate of Compliance                                                                           53

# TABLE OF AUTHORITY

**Statutes and Constitutional Provisions**                                    **Pages**
28 U.S.C. § 1291                                                                  11
28 U.S.C. § 1331                                                                  11
29 U.S.C. § 633a                                                                  13
U.S.C. § 2000e                                                                13, 41


**Federal Rules of Appellate Practice**                                       **Pages**
Fed. R. App. P. 34                                                                10
Fed. R. App. P. 28                                                      10-12, 34, 35

**Federal Rules of Civil Procedure**                                          **Pages**
Fed. R. Civ. P. 56                                                            34, 36

**Rules of the U.S. Court of Appeals for the Eleventh**                       **Pages**
**Circuit**

Rule 26.1                                                                          2
Rule 28-1                                                               10-12, 34, 35

**Supreme Circuit Authority**                                                 **Pages**
Anderson v. Liberty Lobby, Inc.,                                              34, 36
477 U.S. 242, 106 S. Ct. 2505 (1986)

Babb v. Wilkie (Babb I),                                                     40-42, 51
140 S. Ct. 1168 (2020)

Dessert Palace, Inc. v. Costa,                                                    45
539 U.S. 90, 100, 123 S. Ct. 2148 (2003)

Griggs v. Duke Power Co.,                                                         43
401 U.S. 424 (1971)

McDonnell Douglas Corp. v. Green,                                                41
411 U.S. 792, 93 S. Ct. 1817 (1973)

Miller-El v. Dretke,                                               44
545 U.S. 231, 125 S. Ct. 2317 (2005)

Reeves v. Sanderson Plumbing Prods., Inc.,        34, 36, 44, 45
530 U.S. 133, 120 S. Ct. 2097 (2000)

St. Mary's Honor Ctr. v. Hicks,                              45
509 U.S. 502, 511, 113 S. Ct. 2742 (1993)

**Eleventh Circuit Authority**                          **Pages**

Allen v. Tyson Foods,                                           34
121 F.3d 642 (11th Cir. 1997)

Austin v. Progressive RSC, Inc.,                          38
265 F. App'x 836, 844 (11th Cir. 2008)

Babb v. Sec'y, Dep't of Veterans Affs. (Babb II),      41, 51
992 F.3d 1193, 1203–04 (11th Cir. 2021)

Durr v. Sec'y, Dept. Of Veterans Affairs,               40
843 Fed. Appx. 246 (11th Cir. 2021)

EEOC v. Joe's Stone Crabs, Inc.,                         39
296 F.3d at 127 (11th Cir. 2002)

Gay v. Airtran, Inc.,                                         10
427 Fed. Appx. 743 (11th Cir. 2011)

Herndon v. Equitable Variable Life Ins. Co.,          10
325 F.3d 1251 (11th Cir. 2003)

Lane v. Broward County, Fla.,                             39
411 F. App'x 272, 273 (11th Cir. 2011)

Lewis v. Secretary of the U.S. Air Force,              41
No. 20-12463, 2022 WL 2377164 (11th Cir. June 30, 2022)

Malone v. U.S. Att'y Gen.,                                          41
858 F. App'x 296, 300–01 (11th Cir. 2021)

Schoenfeld v. Babbitt,                                             39
168 F.3d 1257, 1267 (11th Cir. 1999

Sledge v. Goodyear Dunlop Tires N. Am. Ltd.,                    36-37
275 F.3d 1014 (11th Cir. 2001)

Steward v. Int'l Longshoreman's Ass'n Local No. 1408,           10
306 Fed. Appx. 527 (11th Cir. 2009)

Strickland v. Norfolk S. Ry.,                                     36
692 F.3d 1151 (11th Cir. 2012)

Tippens v. Celotex Corp.,                                         34
805 F.2d 949 (11th Cir. 1986)

Trask v. Sec'y, Dep't of Veterans Affairs,                        39
822 F.3d 1179, 1191 (11th Cir. 2016)

Troupe v. DeJoy,                                                   41
861 F. App'x 291, 294 (11th Cir. 2021)

Varnedoe v. Postmaster Gen.,                                       42
No. 21-11186, 2022 WL 35614, at *2 (11th Cir. Jan. 4, 2022)

Voudy v. Sheriff of Broward Cty.,                                 38
701 F. App'x 865, 869 (11th Cir. 2017)

Walker v. Mortham,                                                38
158 F.3d 1177 (11th Cir. 1998)

Warrior Tombigbee Transp. Co. v. M/V Nan Fung,                    36
695 F.2d 1294, 1299 (11th Cir. 1983)

Webb-Edwards v. Orange Cnty. Sheriff's Office,                    11
525 F.3d 1013 (11th Cir. 2008)

Williams v. Waste Mgmt., Inc.,                                                39
 411 F. App'x 226, 228 (11th Cir. 2011)

**Federal Appellate Authority**                                          **Pages**

Impossible Electronics Techniques, Inc. v.                                    46
Wackenhut Protective Systems, Inc.,
669 F. 2d 1026, 1031 (5th Cir. 1982)

Lighting Fixture & Electric Supply Company v. Continental Ins. Co.,          45
420 F. 2d 1211, 1213, (5th Cir. 1969)

Rosaura Paz v. Wauconda Health Care and Rehab. Ctr., *LLC*,                  45
 464 F. 3d 659 (7th Cir. 2006)

**Federal District Court Authority**                                    **Pages**
Ford v. DeJoy,                                                               40
2021 U.S. Dist. LEXIS 245660, (N.D. Ala. 2021)

Gray v. City of Montgomery,                                                  49
No. 2:09cv520-MHT, 2010 WL 5137579, at *9 (M.D. Ala. Dec. 9, 2010)

Juarez v. Autozone Stores, Inc.,                                            49
No. 08cv00417-CAB (BLM), 2012 WL 12846087 at *6
(C.D. Cal. Sep. 28, 2012)

Shipley v. Hypercom Corp.,                                                  49
No. 1:09-CV-0265-CAP-RGV, 2011 WL 13119102 at *17
(N.D. Ga. Feb. 15, 2011)

**EEOC Authority**                                                     **Pages**
Bensing v. Dep't of the Navy,                                              50-51
EEOC Appeal No. 01970742, 2000 EEOPUB LEXIS 6339
(Oct. 3, 2000)

Binseel v. Dep't of the Army,                                               50
EEOC Request No. 05970584, 1998 EEOPUB LEXIS 5419
(Oct 8, 1998)

Complainant v. Dep Department of the Air Force,                51
 EEOC Appeal No. 0120130166, 114 FEOR (LRP) 270
(May 7, 2014)

Complainant v. Dep't. of Health and Human Services,           51
EEOC Appeal No. 2020000428, 2021 EEOPUB LEXIS 1305
(April 29, 2021)

Vincent v. U.S. Postal Serv.,                                 50
EEOC Appeal No. 0120072908, 2009 EEOPUB LEXIS 2056
(Aug. 3, 2009)

Woolf v. Dep't of Energy,                                     50
EEOC Appeal No. 0120083727, 2009 EEOPUB LEXIS 1417
(June 4, 2009)

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to the Federal Rules of Appellate Procedure ("Appellate Rules") 34(a) and Eleventh Circuit Rule 28-1(c), Rosado submits this Statement Regarding Oral Argument. "Any party may file . . . a statement explaining why oral argument should, or need not, be permitted."[1] Fed. R. App. P. 34(a)(1). Where the facts and legal arguments are adequately presented in the briefs and record, oral argument would not aid the decisional process. Herndon v. Equitable Variable Life Ins. Co., 325 F.3d 1252, 1253 (11th Cir. 2003) (per curiam); Gay v. AirTran Airways, Inc.,427 Fed. Appx. 743, 744 n.1 (11th Cir. 2011) (per curiam); Steward v. Int'l Longshoreman's Ass'n, Local No. 1408 , 306 Fed. Appx. 527, 529 n.1 (11th Cir.2009) (per curiam). Like Herndon, Gay, and Steward, the facts and legal arguments are adequately presented in the record and, thus, oral argument would not aid in the decisional process. As a result, Rosado does not request oral argument.

---

[1] "Appellant's brief shall include a short statement of whether . . . oral argument is desired . . . ." 11th Cir. R. 28-1(c).

## STATEMENT OF JURISDICTION

Pursuant to Appellate Rule 28(b)(1) and Eleventh Circuit Rule 28-1(h), Rosado submits this Statement of Jurisdiction. The above-captioned case is a direct appeal in a civil case from the summary judgment entered, on November 17, 2022, in the United States District Court for the Middle District of Florida, Jacksonville Division ("District Court"). (Appx., Doc. no. 58, Order).[2] Because the above-captioned case involves the laws of the United States, the District Court was vested with original jurisdiction pursuant to 28 U.S.C. § 1331, as well as jurisdiction related to actions brought under any act of Congress providing for the protection of civil rights pursuant to 28 U.S.C. § 1343(a)(4). Following entry of the summary judgment, Rosado timely filed, on January 16, 2023, a Notice of Appeal in the District Court. (Doc. no. 65, Notice). Because the District Court entered a final summary judgment, jurisdiction now lies with this Court pursuant to 28 U.S.C. § 1291. Webb-Edwards Orange Cnty. Sheriff's Office, 525 F.3d 1013, 1025 (11th Cir. 2008).

---

[2] Because each document cited herein is contained in the Appendix, in the interest of brevity, Rosado will not include the Appendix citation in the remaining citations.

## I.    STATEMENT OF ISSUES ON APPEAL

Pursuant to Appellate Rule 28(b)(2) and Eleventh Circuit Rule 28-1(h), Rosado submits the following Statement of the Issues presented for review:

(1)    Whether the District Court erred when determining that Rosado failed to establish a *prima facie* case?

(2)    Whether The District Court erred when evaluating the evidence of retaliation?

## II.  STATEMENT OF THE CASE

Pursuant to Appellate Rule 28(b)(3) and Eleventh Circuit Rule 28-1(i), Rosado submits the following Statement of the Case.

## A.     Course of the Proceedings and Disposition in the District Court

On December 12, 2019, Rosado commenced the above-captioned case pursuant to: (1) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, ("Title VII") for race discrimination and retaliation; and (2) the Age Discrimination in Employment Act, 29 U.S.C. §633a, ("ADEA") for age discrimination and retaliation. (Doc. no. 1, Compl.). The Court entered an Order striking the Complaint following which Rosado filed an amendment. (Doc. No. 5, Am. Compl.). Subsequently, the Parties engaged in discovery. On March 14, 2022, the Navy filed its Motion for Summary Judgment. (Doc. no. 34, Mot.). On April 18, 2022, Rosado filed his Response in Opposition to the Navy's Motion for Summary Judgment. (Doc. no. 50, Reply). On May 17, 2022, the Navy filed its Reply to Rosado Response. On May 18 and 19, 2022, the Navy filed various other evidentiary exhibits including several affidavit in support of its Motion. (Doc. nos. 51-54).  On November 17, 2022, the District Court entered summary judgment in favor of Appellees, and dismissed the above-captioned case.  (Doc. no. 58, Order).

**B.    Statement of Facts from the Record**

*1.    Appellant Jose Rosado*

Rosado was born in 1957 in Colombia and is Hispanic. (Doc. no. 36-1, Rosado Dep. at 5). He served in the U.S. Marine Corps for approximately twenty years. (Doc. no, 47-1, Rosado Decl. At 5-6). He received an Associates Degree in Business from National University in San Diego.(Doc. no, 47-1, Rosado Decl. at 7);(Doc. no. 47-11, Resume at 7.) After his military service, from March 1998 to November 2007, Rosado held various information technology (IT) positions. (Id. at 3–6). Since November 2007, the Navy has employed Rosado as an IT specialist in the Naval Facilities Engineering Systems Command Southeast (NAVFAC). (Doc. no. 36, Rosado Dep. at 2.) Rosado works in NAVFAC's Command Information Office (CIO), which has four divisions.(Doc. 37-1; Freeman Decl. at 3-4). He is assigned to CIO3, a division that handles customer support, provides technical expertise, and manages equipment such as computers as well as wireless and land line devices. (Doc. no. 36, Rosado Dep. at 2); (Doc. 37-1; Freeman Decl. at 4). Until 2016, Rosado held a GS-11 position on the General Schedule (GS) salary table. (Doc. no. 36, Rosado Dep. at 24, 37). Rosado was the only employee out of 29 employees in the CIO office who had prior EEO activity. He was also the only Hispanic employee. Finally, with regard to age, the data reflects that Rosado was substantially older

than any of the selectees. Rosado is 25 years older than Joshua who was the selectee in two of the selections at issue (Doc. no. 5, Am. Compl. Counts II, VII & XII and Counts V, X, XV & XVIII), 17 years older than Fleming (Counts I, VI and XI), 14 years older than Ravenscroft (Doc. no. 5, Am. Compl. Counts II, VII & XII) and 6 years older than Snead (Doc. no. 5, Am. Compl. Counts II, VII & XII). (Doc. no, 47-1, Rosado Decl. at 8); (Doc 47-5, p.2).

### 2. *Rosado's Employer - Secretary, Department of the Navy*

Carlos Del Toro, Secretary, Department of the Navy, is the employer of Rosado at the Naval Facilities Engineering Systems Command Southeast located at the Naval Air Station in Jacksonville, Florida. (Doc. no, 47-1, Rosado Decl. at 1). Rosado works in the Command Information Office. (Id.). The Command Information Office is divided into four divisions, to wit: Information Business Systems Division (CIO1), Cybersecurity Division (CIO2), Information Technology (IT) Division (CIO3), and the Operational Technology (OT) Division (CIO4). (Doc. 37-1; Freeman Decl. at 3-4). Rosado has been employed in the CIO3 division for over 14 years. (Doc. no. 36, Rosado Dep. at 2); (Doc. no, 47-1, Rosado Decl. at 1).

### 3. *Rosado Hits the Glass Ceiling at CIO at the GS-11 Paygrade*

Rosado was employed as an Information Technology Specialist (System Administrator) at the GS-11 paygrade for almost ten years from his initial hire in

November, 2007, until June, 2016. (Doc. no, 47-1, Rosado Decl. at 1). On June 12, 2016, his position was upgraded to GS-12. (Id.). During a 40 month period between September, 2014 and January, 2018, Rosado applied for and was denied promotion to several positions within the CIO Office. (Doc. no, 47-1, Rosado Decl. at 2). Four of these positions were GS-12 positions and involved selections made before Rosado position was ungraded to GS-12.[3] (Doc. no, 47-1, Rosado Decl. at 3, 5, 6); (Doc. no. 1, Am. Compl. at 6-9).

### 4. Rosado's Prior Protected Activity (2 EEO Complaints)

Rosado initiated two complaints of discrimination prior to the selections at issue in this case.  The first complaint was filed on October 14, 2011 and was concluded on October 26, 2016, as a result of the final decision of the EEOC, Office of Federal Operations. (Doc. no. 38-1, Palmer Decl. at 2). The second complaint was filed on December 10, 2014, and alleged, inter alia, that he was not selected for the GS-12 positions IT positions due to his race, national origin, age and retaliation. (Id.); (Doc. no. 38-3, EEO Compl.)

### 5. Rosado's Failure to Promote Claims

---

[3]Unbeknownst to Rosado, one of his applications involved an opening for two GS-12 IT positions.  Rosado believed he was applying for only one open position because the job announcement had been changed to state there was only a single vacancy, when in reality there were two. (Doc. no, 47-1, Rosado Decl. at 2, fn. 1).

Rosado has alleged discrimination against the Agency based on race, national origin, age and/or retaliation in violation of Title VII of the Civil Rights Act and the Age Discrimination in Employment Act. The gist of Rosado's claims revolves around five instances where Rosado was not selected for various jobs over a forty (40) month period from September 19, 2014 through January 25, 2018. (Doc. no. 5, Am. Compl.)  In addition, Rosado asserted one claim  where he was temporarily promoted and not paid for the higher level work. Thus, Rosado's Title VII discrimination claims encompass the five non-selection decisions initially alleged in Counts I, II, III and V and the temporary promotion claim asserted in Count IV. (Id. at 1-10). These same decisions are also alleged to be retaliatory in violation of Title VII in counts VI through X (Id. at 11-13) and discriminatory in violation of the Age Discrimination in Employment Act in Counts XI through XV. (Id. at 13-16). Finally, counts  XVI through XVIII allege retaliation in violation of the ADEA corresponding to the non-selection decisions initially alleged in counts II and V and the temporary promotion decision initially alleged in count IV. (Id. at 16-18).

### 6.    *Fleming's Selection-Counts I, VI and XI*

To fill Vacancy # 1082872, a selection panel was utilized to evaluate the qualified candidates. (Doc. no. 53-3;First Guthrie Decl. at 7). The selection panel included Jeff Kohler, Scott West, and Clarence "Luke" Guthrie. (Doc. no. 53-3,

First Guthrie Decl. at 3). West assumed that Rosado was Hispanic, (Doc. no. 53-2, West Decl. at 2).

The panel reviewed seventeen resumes, including Rosado's and Fleming's. (Doc. no. 53-3, First Guthrie Decl. at 3). The panel ranked the resumes according to standardized criteria in five categories. Id. The panel gave Fleming a total of 39.67 points on its resume review and Rosado 29.00 points. (Doc. no. 51-1, Freeman Supp. Decl. at 3). In categories B–E, the panel ranked Rosado and Fleming similarly: Fleming received 59 points, and Rosado received 57 points out of the 210 possible points. (Doc. no. 51-1, Freeman Supp. Decl., Ex. 4 (Doc. no. 51-5; Resume Rankings). But in category A, "Windows Server/Work Station Operating Systems Experience," the panel gave Fleming 60 points and Rosado only 30 points out of the 90 possible points. Id. All three panelists gave similar rankings in category A. Id. Because of Rosado's resulting resume score, the panel did not interview him. (Doc. no. 53-3, First Guthrie Decl. at 3); (Doc. no. 53-2, West Decl. at 3). After interviewing Fleming, the panel recommended that he and one other individual be hired because they received the highest scores of those interviewed who were still interested in the job. (Doc. no. 53-3, First Guthrie Decl. at 4-6).

At the time he was considered for Vacancy # 1082872, Rosado had more years of IT experience overall and more years of experience at NAVFAC than

Fleming. (Doc. no. 36-1, Rosado Dep. at 26). Rosado also already had all of the required certifications for the job, while Fleming did not. (Id. at 27). According to Rosado, after Fleming was hired, Fleming said "I do not know how I got the job. I don't know anything about ICS." (Id. at 24). A day or so after Fleming was hired at the GS-12 paygrade , he was transferred to Rosado's branch and performed the same duties as Rosado was performing as a GS-11 worker. (Id.)  In fact, Rosado helped to train Fleming. (Doc. no. 47-1, Rosado Decl. at 4).

### 7.    *Snead and Joshua Selections- Counts II, VII and XII*

Counts II, VII and XII of the Amended Complaint actually involve at least two vacant positions that were filled by Freeman. However, the job announcement failed to give notice to Rosado or any of the other applicants that there was more than one position being filled. Instead, the announcement inaccurately stated that there was only one vacancy. (Doc. no. 47-1, Job Ann. at 1). In addition, there was actually a third vacancy for Vacancy ID# 1276490 which  Freeman filled by selecting  Leon Ravenscroft on a noncompetitive basis on or about December 19, 2014. (Doc. no. 37-1, Freeman Decl. at 13).[4]

This job announcement was open from December 12, 2014 to December 19,

---

[4] Since this selection is the subject of Counts III, VIII, XIII and XVI of the Amended Complaint, the facts related to this selection will be more fully discussed, infra, under the heading corresponding to those Counts of the Amended Complaint.

2014. In her explanation regarding the reason why the announcement listed only one vacancy, Freeman stated that "it appears that the HR mistakenly list (sic) one vacancy and we did not catch this error before the announcement was posted." (Doc. no. 37-1 at 8, ¶29 & fn. 8). Freeman offered no explanation of why they did not correct the posting after the initial posting. Moreover, Freeman's explanation was directly contradicted by the HR Specialist involved in the posting, Brenda Lee Davis. Davis stated in her EEO declaration that she discussed the change to the recruitment to one position as opposed to two with Freeman on December 8, 2014, four days before the announcement was posted. (Doc. no. 47-7, p. 3). The discussion between Davis and Freeman on December 8, 2014 and the decision to change the vacancy announcement to specify that only one selection was being made occurred several weeks after Freeman learned of Rosado's EEO activity.[5] Prior to the decision to change the vacancy announcement Freeman had received two complaints from Rosado regarding a hostile working environment. The first was when she first arrived at the agency in September 2014 when Rosado informed Freeman that he had filed a previous EEO complaint. (Doc. no. 47-9, at 2, 4) The second time was in an email from Rosado on October 20, 2014, where Rosado complained of a hostile work environment and retaliation and informed Freeman

---

[5] According to Freeman's declaration she first learned of Rosado's EEO activity sometime during the week of September 22,2014. Freeman dec. ¶12-13.

that "[a]ny reasonable person would agree that I've paid my dues twice over and, with my on-the-job performance throughout all these very trying years, I think I have earned a chance at a new beginning and a clean slate–NAVFAC SE hires people without experience every day." (Doc. no. 47-9, at 4).

Although a selection panel was tasked with reviewing resumes and interviewing potential candidates in order to recommend potential selectees to the selecting official, neither selectee, Snead nor Joshua, went through the interview process. As stated in the Navy's Motion for Summary Judgment, "only the top three candidates were interviewed . . ." (Doc. no. 34, p. 24). None of the candidates who provided interviews were selected.

In Freeman's EEO declaration dated July 13, 2015, she described the selection of Snead and Joshua as follows:

> I was not involved in the interview process. Mr. Powell was interviewed and recommended by the panel. I concurred with the panel's recommendation and selected Mr. Powell; however, on 3/2/15 Mr. Powell declined the position. As a result, I discussed the issue with Mr. Weaver (the panel chair). Due to urgency within the NAVFAC Corporation to fill over 3000 vacancies and an increasing workload within the OT/ICS division, I asked Mr. Weaver what he thought about Mr. Gregory Snead (race, age, national origin and prior EEO activity-unknown) and Mr. Anthony Joshua (race, age, national origin and prior EEO activity-unknown). Both candidates were located (or in the process of relocating) to Jacksonville, their resumes were good, and we felt they

21

could both "hit the ground running". Based on the positive feedback I received from Mr. Weaver and the certificate being valid for an additional week, I name selected Mr. Anthony Joshua (race, age, national origin and prior EEO activity-unknown) and Mr. Gregory Snead (race, age, national origin and prior EEO activity-unknown) for the two vacant positions in the CIO4 division on 3/11/2015. Mr. Joshua and Mr. Snead were selected because they were highly qualified for the position in question in comparison to the other candidates, including the Complainant. Their resumes contained the knowledge, skills and experience that we were seeking based on the selection criteria.

(Doc. no. 47-9, p. 5).

Freeman "name selected" both Snead and Joshua as opposed to having them evaluated pursuant to the usual resume and interview process. As described in Freeman's declaration,

Generally, as part of the merit selection process for positions at and below the GS-15 at NAVFAC SE, a selection panel is convened to fill most vacancies. In CIO, any of my subordinate supervisors can designate me as the Selecting Official for their recruitments even if I do not directly participate in the recruitment process. As the CIO Department Head, I have always selected a Panel Chairperson to run the recruitment boards on my behalf; especially for positions that is a direct report to me. The Panel Chairperson then selects the panel members, which usually includes a non-voting member called an Evaluation Review Panel (ERP) member. The selection process consists of resume reviews and interviews, if needed. The Panel Chairperson will call meetings, document ratings, conduct interviews, gather all documentation and provide a selection recommendation

to me as the Designated Selecting Official. I can accept the recommendation or select a different candidate, but I must document the reason(s) I selected some else if I do not accept the panel's recommendation. Now, if the position is not a direct report to me, the Division Directors can serve as the Selecting Official and they are responsible for functioning as the Panel Chairperson or selecting someone to serve as their Panel Chairperson.

In her declaration filed in support of Defendant's Motion for Summary Judgment (Doc. no. 37-1), Freeman states that Rosado did not survive the initial round of resume reviews because he did not score enough points to put him in the top seven candidates. (Id. at 17, ¶35). She further testified that "his resume was outdated; it contained old IT terminology; and failed to list functions on his resume that Weaver knew Rosado had accomplished while working in CIO3. (Id). Freeman concludes that "[h]ence, based solely on the score of Rosado's resume, he did not score enough points to be further considered for the CIO4 position." (Id.) Against this backdrop, Freeman states that ". . . although Joshua did not have the ICS experience we were searching for, he did have technical experience and competence in his resume - e.g., systems and/or networking experience - due to the work he had done as a NMCI civilian contractor on the base." (Id. at ¶39). Freeman concluded that both Snead and Joshua were selected on March 11, 2015 for the two CIO4 vacancies because each was highly qualified for the position in

comparison to the remaining candidates on the certification list, including Rosado. (Id. at ¶40).

Despite Freeman's claim that both of these individuals were hired to work in CIO4, they were both transferred to CIO3 shortly after their hire. Joshua was transferred to CIO3 the month following his selection on a temporary basis, (Doc. no. 37-1 at 22, ¶47) and subsequently transferred on a permanent basis to CIO3 on October 18, 2015. (Id. at 26, ¶58). Snead was transferred to CIO3 on a permanent basis on February 21, 2016. (Id. at 27, ¶61).

Rosado's resume submitted at the time of his application for these positions is includes several descriptions of his systems and networking experience. (Doc. no. 47-1 at 8, Rosado decl. ¶12). For example, on page one of his resume Rosado describes "expertise in Local Area Network security requirements and techniques for protecting computer systems . . ." He further states that his "[d]emonstrated key qualifications include: . . .Network Engineering. . ." (Id.) On page two of his resume Rosado describes providing support for "networking infrastructure . . ." and providing technical support for ". . . . network services . . ." On page three of his resume Rosado describes his experience as the Chief Information Officer for the Navy Recruiting District as involving "network design and configuration . . ." and having "[p]lanned and managed facilities and network infrastructure projects ..." ".

. . network wiring installations . . ." and having ". . . [p]lanned and built the network infrastructure . . ." and "[d]esigned, built, installed and configured networking infrastructure at 24 recruiting stations . . ." and ". . .networking support . . .of all computer systems . . ." In addition, every other page of Rosado's resume describes additional networking and systems experience. (Id.)

Rosado's Industrial Control Systems (ICS) experience is reflected in his response to the questionnaire he was required to complete as part of the selection process. (Doc. no. 47-1, ¶13; Doc. no. 47-12).  On page one of the questionnaire the following heading and response  appears:

> 2.  D e v e l o p i n g   I n f o r m a t i o n Management/Information Technology (IM/IT) network requirements to create a secure Industrial Control System (ICS) network.
> D - I have performed this task as a regular part of the job. I have performed it independently and normally without review by a supervisor or senior employee.

(Id. at 2).

On page three of the questionnaire the following headings and responses by Rosado appears:

> 8. Determining cost (e.g. equipment, required manpower etc.) needed to upgrade the Industrial Control Systems' (ICS) equipment and Infrastructure.
> D - I have performed this task as a regular part of the job. I have performed it independently and normally without review by a supervisor or senior employee.

25

*(*Id. at 3).

And again:

> 11. Installing hardware/software to ensure the Industrial Control Systems' (ICS) Infrastructure is functional. Installing hardware/software to ensure the Industrial Control Systems' (ICS) Infrastructure is functional.
> D - I have performed this task as a regular part of the job. I have performed it independently and normally without review by a supervisor or senior employee.

*(*Id.).

And again:

> 12. Configuring network servers, operating systems, firewalls, IDS/IPS, routers and switches, to support the Industrial
> Control System (ICS) community.
> D - I have performed this task as a regular part of the job. I have performed it independently and normally without review by a supervisor or senior employee.

*(*Id*).*

### 8.    *Ravenscroft Selection-Counts III, VIII, XIII and XVI*

Counts III, VIII, XIII and XVI of the Amended Complaint pertain to the

selection of Leon Ravenscroft for the third vacancy under vacancy ID# 1276490.

Ravenscroft was another employee selected by Freeman noncompetively in

the sense that the position was not announced, nor posted and neither Rosado nor

any other employee was made aware of the job opening until after the selection had been made. As described, supra, the job posting for this position stated that there was only one vacancy. Freeman blamed this inaccuracy on the HR representative and claimed that the discrepancy was not discovered until after the job was posted. (Doc. no. 37-1 at 8, ¶29 & fn. 8). The HR Representative stated in her EEO declaration that she discussed changing the posting from two to one vacancy shortly before the job was posted. (Doc. no. 47-7 at 3). Rosado was not afforded the opportunity to be considered for the position Ravenscroft filled because it was not posted and not otherwise made known to CIO employees. Ravenscroft was selected on December 19, 2014, which was the last day to apply for the single job opening described in the job posting for vacancy ID# 1276490. (Doc. no. 37-1 at 13-14, Freeman Decl. ¶26). Ravenscroft's selection before the other candidates had been evaluated, eliminated one of the three GS-12 openings available. Ravenscroft was a temporary or term GS-11 employee at the time of his selection and had only been employed with CIO for approximately six months at the time of his selection. (Doc. no. 37-1 at 12, Freeman Decl. ¶23). Rosado had been employed with CIO for over seven years as a permanent employee performing the same duties and responsibilities as Ravenscroft. (Doc. no. 36-1 at 124, Rosado Depo.);(Doc. no. 47-

1 at 11, Rosado Decl. ¶16). The Navy gave two reasons for non-competively[6] promoting Ravenscroft. One, his performance in CIO3 was more than satisfactory. (Doc. no. 37-1 at 13, Freeman Decl. ¶26). And two, Ravenscroft has ICS experience and/or owned his own company performing this same type of work.[7] (Doc. no. 37-1 at 12, Freeman Decl. ¶24). Rosado's performance was more than satisfactory for over seven years vs. six months for Ravenscroft. (Doc. no. 47-1 at 11, Rosado Decl. ¶16). Ravenscroft had just been term appointed on June 13, 2016. (Doc. no. 37-1 at 12, fn. 6, Freeman Decl. ¶23). As stated, supra, Rosado also had ICS experience. When the ICS division was initially being set up by the Navy, Rosado and Greg Barnard attended the first ever two day ICS seminar at NAVFAC HQ in Washington, DC in 2013. (Doc. 47-1, ¶16). Prior to October 1, 2014, the Industrial Control Systems functions and duties were being performed in the COI3 division where Rosado had been working since his initial hire. (Doc. no. 37-1 at 5, Freeman Decl. ¶8).

---

[6]Rosado does not dispute the fact that Freeman was permitted to promote Ravenscroft non-competively pursuant to agency policy. Rosado's contention is that he was more qualified for the position and that Freeman should have filled the position with the best qualified candidate or, at a minimum, given Rosado the opportunity to be considered. Rosado further contends that he would have been selected since he was better qualified than Ravenscroft.

[7] According to Freeman, she needed to hire someone with industrial control systems (ICS) experience.

### 9.    *Temporary Promotion-Counts IV, IX, XIV and XVII*

The above referenced counts of the Amended Complaint refer to Rosado having accepted a temporary promotion and having worked in the position without compensation. (Doc. no. 5, Am. Compl. at 9-10, 12-13, 15, 17). Freeman denies that Rosado was temporarily promoted.  Wyatt Pruitt, CIO3 Director and  Rosado's immediate supervisor, stated otherwise. (Doc no. 47-14, p. 2).

As reflected in  Pruitt's EEO affidavit, the following question and response appears: "Complainant alleges you told him on August 10, 2015, you could put him in the GS-2210-12 position temporarily. Did you offer it to him as alleged? A: Yes" (Doc. no. 47-14 at 2).    Pruitt was further asked if  Rosado had been in the temporary position since August 10, 2015, but has never been paid for it and there has never been any official paperwork on it.  Pruitt responded by stating "Has been providing coverage since the other individual has been concentrating on learning the other functions." *(Id).*

Freeman contends that  Pruitt never obtained approval from her to offer Rosado the promotion. (Doc. no. 37-1 at 23-25, Freeman Decl. ¶¶ 49-53). Freeman further stated that since  Rosado turned down this very same offer made by Freeman at an EEO mediation in September, 2015, she did not seek the necessary authorization to temporarily promote Rosado to a GS-12 level. (Id. at 24, ¶51).

Rosado had already accepted the temporary promotion job offer from Pruitt, had already been performing the job for 60 days at the time of Freeman's offer, and the offer from Pruitt was not contingent on Rosado settlement of his EEO complaint. (Doc. no. 36-1 at 140-144, Rosado depo.).

### 10. *Supervisory IT Specialist Position-Counts V, X, XV and XVIII*

In his final effort to obtain a promotion at CIO, Rosado applied for a Supervisory IT Specialist position, GS-2210-13. Rosado leaned on or about January 25, 2018, that he was not selected. (Doc. no. 47-1 at 7, Rosado Decl.). Anthony Joshua was the selectee. This was one of the same individuals selected for the GS-12 position referenced in Counts II, VII, and XII of the Amended Complaint. (Id.).

The Navy asserts that Joshua was better qualified than Rosado for the position. Three reasons were offered for asserting that Joshua was better qualified for the position. One, Joshua has a bachelor's degree and Rosado does not. Two, Joshua served as acting CIO Director on a temporary basis for a 90 day period. And, three, Joshua has 20 years experience and has systems and networking experience that Rosado does not possess.

Freeman stated in her EEO declaration of August 15, 2018, that a bachelor's degree was not requirement for the position according to the position description and job announcement. (Doc. no. 47-15 at 9, Freeman 8/15/18 decl.). The position

30

was posted and was open from November 20, 2017 to December 1, 2017. (Doc. no. 37-1 at 29, Freeman Decl. ¶66). After Rosado had applied for the position and after the job posting had closed, Freeman inserted a degree requirement into the process by sending an email to HR stating "I need to make a correction to my Round 1 criteria." (Doc. no. 47-16 at 1). The most significant change to the selection process made by Freeman at that time was to add an educational requirement as follows: "POSSESS AT LEAST (1) EDUCATION REQUIREMENT: Bachelor Degree from accredited University or CNSSI 4011-4016 Certificate or NDU CISO certificate." (Doc. 47-16 at 1). In her EEO declaration regarding the selection of Joshua for the supervisory position, Freeman stated "Based on the Cybersecurity Workforce requirements, the biggest difference between Rosado and Joshua is that Rosado has an associate degree and Joshua has a bachelor degree." (Doc. no. 47-15 at 8).

Rosado had previous supervisory experience due to the times he was asked to be acting director in the absence of the director and due to his 14 years of supervisory experience in the military. (Doc no. 47-1 at 7, Rosado Decl. ¶10). Rosado had over 14 years of supervisory experience while in the United States Marines.(Id.). With regard to systems and networking experience, Rosado has as much or more such experience as Joshua. (Id.). The first five pages of Rosado's resume submitted for the position shows systems and networking experience such

as network engineering, network infrastructure, repairing network hardware and application issues, network services, network design and configuration, networking support, network domain administration, solution of networking and software problems, etc. (Doc. no. 51-18 at 1-5, Rosado Res.). Rosado has 40 years experience compared to Joshua's 20 years. (Id.); (Doc no. 47-1 at 7, Rosado Decl. ¶10).

### 11.    *Retaliation Claims*

¶16 of Rosado's Amended Complaint alleges that on or about April 1, 2015, Rosado's supervisor, Ms. Andrea Freeman, berated him during a group meeting and stated, "If you don't want to be here, the door is open. I'm tired of people walking on egg shells, I'm not going backwards, we are moving forward. I'm not afraid of EEO or the union, bring it on." (Doc. no. 5-6, Am. Compl. ¶16). During her deposition Freeman admitted making the statement alleged by Rosado. (Doc. no. 35-1, at 17). At the time the statement was made to Rosado, Freeman was not aware of any other employee who had filed an EEO complaint other than Rosado. (Id. at 19-20). During her 30 year history as a government employee, she had only been named as a responsible management official by one employee in an EEO complaint. That employee is Rosado. (Id. at at 16). Freeman first learned of Rosado's prior EEO complaint activity in September 2014 shortly after her arrival in Jacksonville.

32

(Id. at 9-11.) In September, 2015. Rosado rejected Freeman's offer of the temporary promotion at issue in this case on the day Rosado was mediating his EEO complaint regarding the promotions at issue in vacancy announcement # 1276490, the same vacancy announcement under which Ravenscroft, Snead and Joshua were promoted. (Doc. no. 37-1 at 23-24, Freeman Decl. ¶51). Rosado declined to dismiss his complaint in return for Freeman's promise to make his temporary promotion official because his supervisor, Pruitt, had already given him the temporary promotion and placed him in the position. After Rosado's refusal to dismiss his EEO complaint, Freeman declined to take any action to formalize Rosado's temporary promotion. (Id. at 24-25). ((Doc. no. 47-1 at12, Rosado Decl. ¶17).

### III.    STATEMENT OF THE STANDARDS OF REVIEW

Pursuant to Appellate Rule 28(a)(8)(B) and Eleventh Circuit Rule 28-1(g), Rosado submits this Statement of the Standards of Review. "This Court reviews the district court's grant of summary judgment de novo, applying the same standards used by the district court."[8]    Allen v. Tyson Foods, 121 F.3d 642, 646 (11th Cir. 1997) (internal quotations and citations omitted) (reversing summary judgment where evidence raised a question as to whether the plaintiff was subjected to a hostile environment).  "Summary judgment is such a lethal weapon, depriving a litigant of a trial on the issue, caution must be used to ensure only those cases devoid of any need for factual determinations are disposed of by summary judgment." Tippens v. Celotex Corp., 805 F.2d 949, 952-53 (11th Cir. 1986).

---

[8] Summary judgment is proper only where no  genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Resolving all doubts in favor of the non-movant, courts must make a *de novo* determination as to "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505 (1986). To that end, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Id. at 255. Courts may not make any credibility determinations or attempt to weigh evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097 (2000); see Anderson, 477 U.S. at 255 ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a  judge.").

## IV. SUMMARY OF ARGUMENTS

Pursuant to Appellate Rule 28(a)(7) and Eleventh Circuit Rule 28-1(j), Rosado submits the following Summary of Arguments:

(1) The District Court erred when determining that Rosado failed to establish a *prima facie* case. Proof of a prima facie case regarding failure to promote does not require a comparison of the relative qualifications of the applicants. Since Rosado has established a prima facie case, summary judgment was improper.

(2) The District Court erred when evaluating the evidence of retaliation. The evidence of retaliation was not viewed in the light most favorable to Rosado. Based on the totality of the evidence, a reasonable inference of retaliation could be made to establish the requisite causation between Rosado's prior protected activity and the Navy's action in failing to consummate his temporary promotion and to promote him to the five promotions at issue.

## V.  ARGUMENT AND CITATIONS OF AUTHORITY

**A.**　　　　　**The District Court Erred in Determining that Rosado Failed to Establish a <u>Prima</u> <u>Facie</u> Case**

The District Court concluded that it  evaluated the record in accordance with the  applicable  principles.  (Doc. no. 58, Order, pp. 9-11).  However,  summary judgment is only proper where there are no genuine issues of material fact. Fed. R. Civ. P. 56(c). Accepting the evidence, resolving doubts, and drawing   justifiable inferences in favor of the non-movant, if a fair-minded jury could return a verdict in favor of the non-movant, summary judgment is improper. <u>Anderson</u>, 477 U.S. 242 at 252-255. Courts may not make credibility determinations or weigh evidence. <u>Reeves</u>, 530 U.S. at 150-51; <u>Strickland v. Norfolk S. Ry.</u>, 692 F.3d 1151, 1162 (11th Cir. 2012). Indeed, the summary judgment cardinal rule is that courts can neither resolve the facts nor reconcile the issues, but only look to ascertain that there is an issue. <u>Warrior Tombigbee Transp. Co. v. M/V Nan Fung</u>, 695 F.2d 1294, 1299 (11th Cir. 1983).

<u>Sledge v. Goodyear Dunlop Tires N. Am. Ltd.</u>, 275 F.3d 1014 (11th Cir. 2001) (per curiam) is instructive concerning improperly weighing and disregarding evidence related to summary judgment.  In Sledge, the African-American plaintiff claimed that Goodyear refused to promote based upon race.  <u>Sledge</u>, 231 F. Supp. 2d at 1015.  When improperly granting summary judgment on the ground that the

plaintiff failed an examination and, thus, could not establish qualification for the position, this Court explained,

> A party seeking summary judgment must demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In assessing whether the movant has met its burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion and all reasonable doubts about the facts should be resolved in favor of the non-movant.

Id. at 1019 (internal quotations and citations omitted).    When granting summary judgment, the court focused on the plaintiff's failure to pass a written examination, i.e., qualification. Id. at 1018-19. However, had the court focused on other facts, it would have concluded that a reasonable jury could have still found the plaintiff was qualified and the exams were merely a pretext for discrimination. Id. at 1019. Indeed, only 1 of the 107 Mechanics were African-American, the plaintiff was was denied interviews without reason, the plaintiff's performance established qualification, and the selected candidate failed the exam. Id. at 1019-20. Because what transpired reinforced the notion that the exam was mere pretext, the evidence of discrimination was compelling and summary judgment was improper. Id. at 1020.

Here, the issue of Rosado's qualifications for the various promotions was the central issue in the District Court's consideration of the navy's summary judgment

motion. However, proof of the relative qualifications of the various candidates does not appear to be required to establish a prima facie case of discrimination in this circuit.

In Walker v. Mortham, 158 F.3d 1177 (11th Cir. 1998), the Eleventh Circuit addressed conflicting panel opinions concerning whether plaintiffs must demonstrate that equally or less qualified candidates were promoted over them as part of their prima facie case. See Voudy v. Sheriff of Broward Cty., 701 F. App'x 865, 869 (11th Cir. 2017) (citing Walker, 158 F.3d at 1186). The Court in Walker after analyzing the Eleventh Circuit's prior precedent rule and performing "an independent assessment of which standard best comported with Supreme Court precedent," determined that a plaintiff need only show that the position was filled by someone outside of her protected class to establish a prima facie case. Voudy, 701 F. App'x at 869 (citing Walker, 158 F.3d at 1193). Therefore, to establish a prima facie case for discriminatory failure to promote, Plaintiff need only show that: (1) he was a member of a protected class; (2) he applied for and was qualified for a position for which defendant was accepting applications or trying to fill; (3) despite his qualifications, he was not hired; and (4) after his rejection, the position remained open despite the plaintiff's proven qualifications or the position was filled by a person outside of his protected class. Austin v. Progressive RSC, Inc., 265 F.

App'x 836, 844 (11th Cir. 2008); Williams v. Waste Mgmt., Inc., 411 F. App'x 226, 228 (11th Cir. 2011); Schoenfeld v. Babbitt, 168 F.3d 1257, 1267 (11th Cir. 1999); Walker, 158 F.3d at 1192.

Accordingly, the fourth prong of the prima facie case in an action alleging discriminatory failure to hire appears to require the plaintiff to show that "the position remained open or was filled by another person outside of her protected class." See also Schoenfeld, 168 F.3d at 1267 (fourth prong stated as "the position remained open or was filled by another person outside of her protected class"); Trask v. Sec'y, Dep't of Veterans Affairs, 822 F.3d 1179, 1191 (11th Cir. 2016) (same); Lane v. Broward County, Fla., 411 F. App'x 272, 273 (11th Cir. 2011) (same); EEOC v. Joe's Stone Crabs, Inc., 296 F.3d at 127 (11th Cir. 2002)(same).

Here, Rosado can establish a prima facie case. Rosado was a member of one or more protected classes and he applied for the promotions in question. (Doc. no. 47-1 at 2, Rosado Decl. ¶3). Rosado presented a promotional package expressing his interest in the various positions. (Doc. no. 47-1 at 3-8 Rosado Decl. ¶¶ 5-10). There is no dispute that Rosado was qualified for the position. There is also no dispute that the positions were filled by persons outside of Rosado's protected classes. As observed by the District Court,

> . . . the Secretary concedes that Rosado has satisfied the
> first three elements of the prima facie case: Rosado

> belongs to protected classes (race, national origin, and
> age); he applied for and was qualified for each
> promotion; and he was rejected despite his qualifications.
> See Motion at 19–20, 22, 24. On the final element, the
> parties agree that those selected were outside Rosado's
> protected classes, but the parties dispute whether the
> selectees were equally or less qualified than Rosado. See
> id. at 22, 24, 26, 28; Response at 19–23, 25.

(Doc. no. 58 at 20, Order).

A relatively new standard for proof of discrimination by federal employees was set forth in Babb v. Wilkie, 140 S.Ct. 1168 (2020). The  proper standard for discrimination claims asserted by federal employees in this circuit has been changed as a result of the holding in Babb v. Wilkie, 140 S.Ct. 1168 (2020) and several unpublished Eleventh Circuit decisions including Durr v. Sec'y, Dept. Of Veterans Affairs, 843 Fed. Appx. 246 (11th Cir. 2021). As stated in Ford v. DeJoy, 2021 U.S. Dist. LEXIS 245660, (N.D. Ala. 2021), "at this time, a plaintiff's burden under the Babb standard appears light-at least with respect to liability." Id. at *25. Under the standard set forth in Babb, supra, a prima facie case of discrimination would appear to suffice to sustain the light burden required thereunder. This is so for several reasons including the fact that the Defendant's asserted non-discriminatory reason is not sufficient for the court to grant summary judgment on liability. See e.g., Ford v. DeJoy, 2021 U.S. Dist. LEXIS 245660 at *26, (N.D. Ala. 2021).

On remand from the Supreme Court, reversed the entry of summary judgment

as to the age discrimination claims, but initially affirmed, again, the entry of summary judgment on the retaliation claim. See Babb v. Sec'y, Dep't of Veterans Affs. (Babb II), 992 F.3d 1193, 1203–04 (11th Cir. 2021).

Recently, in Lewis v. Secretary of the U.S. Air Force, No. 20-12463, 2022 WL 2377164 (11th Cir. June 30, 2022), the court analyzed which portions of McDonnell Douglas v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973) had been rejected by Babb I and Babb II. See Lewis, 2022 WL 2377164, at *10–11. The court reasoned that Babb I and Babb II had rejected the second and third steps of the McDonnell Douglas framework but had not rejected the first step of requiring a plaintiff to show a prima facie case. See also Malone v. U.S. Att'y Gen., 858 F. App'x 296, 300–01 (11th Cir. 2021) (per curiam) ("[T]he McDonnell Douglas framework no longer applies to claims brought under 42 U.S.C. § 2000e-16(a). Specifically, the fact that there may be non-pretextual reasons for an adverse employment action 'doesn't cancel out the presence, and the taint, of discriminatory reasons.'" (quoting Babb II, 992 F.3d at 1204)). A number of other unpublished Eleventh Circuit decisions have continued to require plaintiffs to satisfy the first step of the McDonnell Douglas framework by establishing a prima facie case of discrimination or retaliation. See Lewis, 2022 WL 2377164, at *10–11 (discrimination); Troupe v. DeJoy, 861 F. App'x 291, 294 (11th Cir. 2021) (per curiam) (discrimination); Malone, 858 F. App'x

41

at 303 (retaliation); <u>Varnedoe v. Postmaster Gen.</u>, No. 21-11186, 2022 WL 35614, at *2 (11th Cir. Jan. 4, 2022) (per curiam) (retaliation).

It is important to emphasize here that the Navy's summary judgment motion addressed only liability under the ADEA and Title VII as opposed to the remedies available to Rosado. This is significant because to obtain remedies such as reinstatement, backpay, compensatory damages or other relief related to the end result of an employment decision, the Plaintiff has a significantly higher burden and must show that discrimination was a but-for cause of the employment decision. <u>Babb I</u>, 140 S. Ct. at 1777-78.

Therefore, Rosado submits that he has established a prima facie case of discrimination and that summary judgment should not have been granted for the Navy.

Even if Rosado was required to establish that he was equally or better qualified than the eventual selectees as part of a prima facie case, he submits that he has done that when viewing the evidence in the light most favorable to Rosado including all reasonable inferences that may be drawn therefrom. The District Court failed to draw reasonable inferences favorable to Rosado consistent with the evidence. Too much emphasis was given to the Navy's vague, subjective descriptions of the relative qualifications of Rosado and the various selectees. Not enough emphasis was placed

on Freeman's obviously contradictory and presumably false explanation for changing the vacancy announcement for the three positions selected under vacancy #1276490 to indicate that only one position was open. Not enough consideration was given to the actual contents of Rosado's resume showing he had experience and qualifications equal to or greater than the selectees. No consideration was given to Freeman's change of the education requirement for the Gs-13 position to require a Bachelor's degree after the position posting had closed.

With regard to the bachelor's degree, Griggs v. Duke Power Co., 401 U.S. 424 (1971), illustrates the discriminatory aspect of requiring a degree that is not related to measuring performance of job duties. As stated, supra, a bachelor's degree was not even a requirement of the original posting or the position description. This requirement was added at the 11th hour when Ms. Freeman inserted it into the process by sending an email to HR. (Doc. 47-16). With regard to  Joshua's 90 days of supervisory experience due to his service as acting director,  Rosado also had supervisory experience due to the times he was asked to be acting director in the absence of the director and due to his 14 years of supervisory experience in the military. (Doc no. 47-1 at 7, Rosado Decl.¶10).  Rosado had over 14 years of supervisory experience while in the United States Marines. Id. With regard to systems and networking experience,  Rosado has as much or more such experience as  Joshua.

Rosado has 40 years experience compared to Joshua's 20 years. All of these facts give rise to a reasonable inference that Rosado was at least as qualified as Joshua and are such that a jury should have been permitted to weigh the evidence and decide whose qualifications were superior.

With regard to the Fleming promotion, there is other evidence from which it may be inferred that ICS experience was not as critical or necessary as Freeman suggests. For example, after Lewis Fleming was hired ostensibly for CIO4, he stated that he did not know why he was hired because he did not know anything about ICS. Fleming was then transferred to CIO3 where Plaintiff assisted in training him for the position. Moreover, as described, supra, both Snead and Joshua were ostensibly hired into CIO4 due to their alleged qualifications related to ICS, but then both were transferred to CIO3 where Plaintiff works. In fact, Freeman admitted that Joshua had no ICS experience. (Doc. no. 37-1 at 20, Freeman Decl. ¶41).

A reasonable inference can be drawn that the above explanations by Freeman are false. As stated in <u>Reeves v. Sanderson Plumbing Products, Inc</u>., <u>supra</u>, when a party makes a false statement with regard to the employment action at issue, this false statement can be viewed as affirmative evidence of guilt. This affirmative evidence of guilt is sufficient from which a fact finder may infer discriminatory intent. In <u>Miller-El v. Dretke</u> 545 U.S. 231, 125 S. Ct. 2317 (2005), the Supreme Court stated,

44

"In employment discrimination cases, '[p]roof that the Defendants' explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.'" Citing Reeves v. Sanderson Plumbing Products, Inc., supra.    As further stated in Reeves, supra, "A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Id. at 530 U.S. 133, 148, 120 S. Ct. 2097. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511, 113 S. Ct. 2742 (1993), ("[R]ejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination . . ."). See also, Dessert Palace, Inc. v. Costa, 539 U.S. 90, 100, 123 S. Ct. 2148 (2003) (discussing Reeves).

This proposition was further illustrated in Rosaura Paz v. Wauconda Health Care and Rehab. Ctr., LLC, 464 F. 3d 659 (7th Cir. 2006).    As observed in Paz, supra, "dishonesty alone could be a sufficient basis for a jury to conclude that a defendant is covering up a discriminatory motivation for an employee's discharge."    Citing Reeves, supra.    In addition, summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts.    Lighting Fixture & Electric Supply Company v. Continental Ins. Co., 420 F. 2d 1211, 1213, (5th Cir. 1969).    If reasonable minds might differ on

45

the inferences arising from undisputed facts, then the Courts should deny summary judgement.    Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc., 669 F. 2d 1026, 1031 (5th Cir. 1982).

With regard to the Ravenscroft promotion, Rosado had been employed as a permanent employee in CIO3 for over seven years at the point where Ravenscroft was promoted to GS-12. At the time Ravenscroft had been employed as a GS-11 temporary employee in CIO3 for only six months. The primary reason given was due to Ravenscroft's ICS experience. But, as reflected in his questionnaire submitted with his application for the position,  Rosado had ICS experience as well. In view of Freeman's acknowledgment that Joshua had no ICS experience and yet was hired into CIO4, a reasonable inference can be drawn that Rosado was at least as qualified as Ravenscroft or that ICS experience was not as significant as Freeman claimed.

In addition,  Freeman's explanation for the decision not to select  Rosado for any of these positions was something to the effect that  Rosado's resume failed to list functions that  Weaver knew  Rosado had accomplished while working at CIO3. Yet, Weaver did not utilize of take this information into account when determining Rosado's qualifications. (Doc. 37-1 at 17, Freeman Decl. ¶35). Yet, it appears that Weaver also had knowledge of the work  Joshua did when he worked on the Navy/Marine Corps Intranet program and used this information to select Joshua over

46

Rosado. (Doc.37-1 at 18, Freeman Dec. ¶39). Thus, the selectee was treated more favorably when it came to utilization of the knowledge possessed by Weaver.

Another issue arising from Ms. Freeman's explanation is her reference to Rosado's resume being "outdated," and containing "old" IT terminology. Although Ms. Freeman provided no examples of this, Plaintiff submits that this explanation referencing "old" and outdated" information on the resume of an individual with as many years of IT experience as Rosado is evidence from which a reasonable inference of ageism can be drawn. Apart from her failure to provide any examples, Freeman provided no explanation as to how any "outdated" or "old" terminology would be a disqualifying factor in the selection process. Certainly, this type of conclusion arrived at by Freeman would be an indication of Rosado's age, but beyond that, it is not clear what the significance of having "old' or "outdated" information on a resume would be given Rosado's current status and long history of employment in the Command Information Office. In other words, there does not seem to be any suggestion that Rosado is currently using "old" or "outdated" methods to perform his job, only that he allegedly used this terminology on his resume.

## B.  The District Court Erred When Evaluating the Evidence of Retaliation

As stated supra, on or about April 1, 2015, Rosado's supervisor, Ms. Andrea Freeman, berated him during a group meeting and stated, "If you don't want to be

here, the door is open. I'm tired of people walking on egg shells, I'm not going backwards, we are moving forward. I'm not afraid of EEO or the union, bring it on." (Doc. no. 5-6, Am. Compl. ¶16).

A few months later in September, 2015. Rosado rejected Freeman's offer of the temporary promotion at issue in this case on the day  Rosado was mediating his EEO complaint regarding the promotions at issue in vacancy announcement # 1276490, the same vacancy announcement under which Ravenscroft, Snead and Joshua were promoted. (Doc. no. 37-1 at 23-24, Freeman Decl. ¶51). The temporal proximity to  Rosado's EEO mediation where Ms. Freeman was displeased due to Rosado's rejection of her offer and her action to refrain from paying him for performing the temporary duties is obvious and supports a claim of retaliation. Moreover Ms. Freeman's deposition testimony regarding her communication with Pruitt simply does not appear credible. (Doc. no. 35-1 at  50). Freeman's testimony was inconsistent with the testimony of Pruitt, Rosado's immediate supervisor. See (Doc. no. 47-14 at 2). The reasonable inference that may be drawn from this is that Freeman was not credible on the issue of Rosado's temporary promotion.

While it is generally true in the Eleventh Circuit that it is the date of filing of the prior EEOC complaint, not merely its pendency, that constitutes "protected activity" for purposes of an unlawful retaliation claim, cases within the Eleventh

48

Circuit have also made clear that the occurrence of significant events during the complaint process, such as the taking of depositions, could also separately constitute "protected activity". See, e.g., <u>Gray v. City of Montgomery</u>, No, 2:09cv520-MHT, 2010 WL 5137579, at *9 (M.D. Ala. Dec. 9, 2010) (reasoning that "separate protected activity" could occur while a lawsuit is pending, such as the plaintiff giving a deposition that angers a defendant, because "a plaintiff can engage in multiple instances of protected activity at different stages of a lawsuit.") (emphasis supplied); <u>Shipley v. Hypercom Corp</u>., No. 1:09-CV-0265-CAP-RGV, 2011 WL 13119102 at *17 (N.D. Ga. Feb. 15, 2011) (quoting <u>Gray</u> in recognizing that "a plaintiff can engage in multiple instances of protected activity at different stages of a lawsuit."). See also <u>Juarez v. Autozone Stores, Inc</u>., No. 08cv00417-CAB (BLM), 2012 WL 12846087 at *6 (C.D. Cal. Sep. 28, 2012) (relying on <u>Gray</u> to deny summary judgment based on finding that plaintiff's deposition during pending case was a new instance of protected activity and that lapse of six weeks between deposition and plaintiff's termination satisfied causal connection requirement).

Here, Rosado participated in a mediation with Freeman regarding one of the very issues in this lawsuit, i.e., the temporary promotion. After Mr. Rosado refused to dismiss his complaint in return for a promise of the temporary promotion, Freeman declined to process the paperwork to make his promotion official. An inference of

retaliation is permissible under the circumstances.

The EEOC Office of Federal Operations has developed a substantial body of case law over the years regarding claims of discrimination and retaliation asserted against federal employers. One significant area often addressed by the EEOC in these appeals concerns the issue of retaliation or reprisal. In that context it has been held that comments which, on their face, discourage an employee from participating in the EEO process violate the letter and spirit of the EEOC regulations and evidence a per se violation of the law. Binseel v. Dep't of the Army, EEOC Request No. 05970584, 1998 EEOPUB LEXIS 5419 (Oct 8, 1998) (per se violation found where complainant told that filing an EEO suit was "wrong way to go about getting a promotion"). When a supervisor's behavior has a potentially chilling effect on the use of the EEO complaint process -- the ultimate tool that employees have to enforce equal employment opportunity -- the behavior is described as "per se retaliation." See Vincent v. U.S. Postal Serv., EEOC Appeal No. 0120072908, 2009 EEOPUB LEXIS 2056 (Aug. 3, 2009) (per se violation found where supervisor mentioned EEO complaints had been filed and said, "What goes around, comes around"); Woolf v. Dep't of Energy, EEOC Appeal No. 0120083727, 2009 EEOPUB LEXIS 1417 (June 4, 2009) (per se violation found when a labor management specialist told the complainant, "as a friend," that her EEO claim would polarize the office); Bensing

v. Dep't of the Navy, EEOC Appeal No. 01970742, 2000 EEOPUB LEXIS 6339
(Oct. 3, 2000) (per se violation found where supervisor conceded that he had objected
to complainant's contacts with EEO office and union representative);Complainant v.
Department of the Air Force, EEOC Appeal No. 0120130166, 114 FEOR (LRP) 270
(May 7, 2014) (complainant was retaliated against when he received a mid-term
evaluation which criticized him for seeking agreement with co-workers that
management decisions were biased or discriminatory).

When management's behavior has a potentially chilling effect on the use of the
EEO complaint process - the ultimate tool that employees have to enforce equal
employment opportunity - the behavior is a per se violation. See also Complainant
v. Dep't. of Health and Human Services, EEOC Appeal No. 2020000428, 2021
EEOPUB LEXIS 1305 (April 29, 2021), and cases cited therein.

These prior EEOC decisions serve to illustrate the significance of these
comments by Freeman as an evidentiary matter. Rosado suggests that the comments
made by Freeman is evidencefrom which a permissible inference of retaliation can
be drawn.  In view of the summary judgment standard and the light burden set forth
under Babb I & II, supra, this evidence warrants a finding that Rosado's retaliation
claims asserted in Counts VI through X and XVI through XVIII of the Amended
Complaint should not have been resolved by summary judgment. In addition, the

temporal proximity of Freeman's knowledge of Rosado's EEO activity and the EEO mediation which she attended is highly relevant to the retaliation claims as well.

Accordingly, Rosado submits that a reasonable inference of retaliation can be drawn from these facts and circumstances.

## VI. CONCLUSION

For the foregoing reasons, Rosado respectfully requests that the Court reverse the District Court's Order granting Defendant-Appellee's Motion for Summary Judgment and remand the above-captioned case to the District Court with instructions to deny the motion and permit the above-captioned case to proceed to trial.

Respectfully submitted this 29th day of March, 2023.

_/s/Archibald J. Thomas, III_
Law Offices of Archibald J. Thomas, III, P.A.
1205 Beach Blvd., Suite 10
Jacksonville Beach, FL 32250
(904) 674-2222
Email: thomas@job-rights.com
_Counsel for Appellant-Plaintiff_

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE, AND TYPE-STYLE REQUIREMENTS**

This document complies with the requirements in Appellate Rule 32 because, excluding the parts of the document exempted by Appellate Rule 32(f), this document contains, as indicated by Microsoft Word, approximately 11,054 words in 14-point Times New Roman Font.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 29th day of March, 2023, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participant listed below:

> Sean Siekkinen,
> Assistant United States Attorney
> United States Attorney's Office
> 400 N. Tampa Street, Suite 3200
> Tampa, FL 33602
> sean.siekkinen@usdoj.gov

> */s/Archibald J. Thomas, III*
> Law Offices of Archibald J. Thomas, III, P.A.
> 1205 Beach Blvd., Suite 10
> Jacksonville Beach, FL 32250
> (904) 674-2222
> Email: thomaslawfirm1@gmail.com
> *Counsel for Appellant-Plaintiff*