Case No. 23-10181

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

**JOSE R. ROSADO**

Appellant-Plaintiff,

v.

**CARLOS DEL TORO, SECRETARY, U.S. DEPARTMENT OF THE NAVY**

Appellee-Defendant.

On Appeal from the United States District Court for the
Middle District of Florida
Jacksonville Division
3:19-CV-01428-MMH-PDB

**APPELLANT'S REPLY BRIEF**

**Attorney for Appellant-Plaintiff:**
**Archibald J. Thomas, III**
**Florida Bar No. 231657**
**Law Offices of Archibald J. Thomas, III, P.A.**
**1326 3ʳᵈ Street South, Suite 2**
**Jacksonville, Florida 32250**
**Telephone: (904) 674-2222**
**Email: thomaslawfirm1@gmail.com**

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

COMES NOW Appellant-Plaintiff Jose Rosado ("Rosado" or "Appellant") and, pursuant to Rule of the United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit Rule") 26.1, certifies that, to the best of Rosado's knowledge, the following is a complete list of the persons and entities that have an interest in the outcome of the above-captioned case:

Angerer, Ronald P., former associate attorney at Law Offices of Archibald J. Thomas, III, P.A.;

Barksdale, Patricia D., U.S. Magistrate Judge, Middle District of Florida;

Carter, Ronnie S., Asst. U.S. Attorney, Counsel for Defendant-Appellee;

Cunningham, Collette B.,Asst. U.S. Attorney Counsel for Defendant-Appellee;

Handberg, Roger B., U.S. Attorney, Counsel for Defendant-Appellee;

Hoppmann, Karin, former Acting United States Attorney;

Howard, Marcia Morales, U.S. District Judge, Middle District of Florida;

Kanupp, Samuel B., former associate attorney at Law Offices of Archibald J. Thomas, III, P.A.;

Law Offices of Archibald J. Thomas, III, PA, Counsel for Plaintiff-Appellant;

Lopez, Maria Chapa, former United States Attorney;

C-1 of 2

Rhodes, David P., Assistant United States Attorney, Chief, Appellate Division;

Rosado, Jose R., Plaintiff-Appellant;

Siekkinen, Sean, Asst. U.S. Attorney, Counsel for Defendant-Appellee;

Thomas, III, Archibald J., Counsel for Plaintiff-Appellant;

Thresher Taylor, Michelle, Assistant United States Attorney;

Toro, Carlos Del, Secretary, U.S. Department of the Navy;

U.S. Department of the Navy;

Rosado certifies that, to the best of Rosado's and Counsel's knowledge, no publicly traded company or corporation has an interest in the outcome of this case or appeal.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement    C-1

Table of Contents                                                        1

Table of Citations                                                       2

Argument and Citations of Authority                                      4

    A. Prima Facie Case for "Failure to Promote" Claims        4

    B. Rosado's Temporary Promotion Claim                      7

    C. Rosado's Other Claims of Retaliation                    10

    D. Rosado has Not Abandoned His Other Claims of Retaliation    13

Certificate of Compliance

Certificate of Service

## <u>TABLE OF CITATIONS</u>

**<u>Supreme Court Authority</u>**                                                    **<u>Pages</u>**

<u>Patterson v. McLean Credit Union</u>,                                          7
491 U.S. 164, 109 S. Ct. 2363, 105 L.Ed 2d 132 (1989)

<u>Texas Department of Community Affairs v. Burdine</u>,            7
450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)


**<u>Eleventh Circuit Authority</u>**                                               **<u>Pages</u>**

<u>Brown v. Wrigley Manufacturing Company, LLC</u>,
No. 21-11328, 2023 WL 2386500 at *3 (11th Cir. Mar. 7, 2023)        4

<u>Filius v. Potter</u>,                                                            9
176 F. App'x 8, 11-12 (11th Cir. 2006)

<u>Lee v. GTE Fla., Inc.</u>,                                                       6
226  F. 3d 1249, 1253 (11th Cir. 2000)

<u>Lewis v. City of Union City</u>,                                               6
934 F. 3d 1169, 1185 (11th Cir. 2019)

<u>Malone v. U.S. Att'y Gen.</u>,                                                 5
858 F. App'x 296, 300–01 (11th Cir. 2021)

<u>Taylor v. Runyon</u>,                                                          6
<u>175 F. 3d 861, 866 (11th Cir. 1999</u>

<u>Voudy v. Sheriff of Broward Cty.</u>,                                         5
701 F. App'x 865, 869 (11th Cir. 2017)

*<u>Walker v. Mortham</u>,                                                       4-7
158 F.3d 1177 (11th Cir. 1998)

<u>Wilson v. B/E Aerospace, Inc.</u>,                                            6
376 F. 3d 1079, 1087 (11th Cir. 2004)

<u>Wu v. Thomas,</u>                                                                          6
847 F. 2d 1480, 1483 (11th Cir. 1988

**<u>Federal Appellate Authority</u>**                                          **<u>Pages</u>**

<u>Crawford v. Western Electric Co.</u> Inc.,                               4, 7
614 F.2d 1300, 1315 (5th Cir. 1980)

<u>Impossible Electronics Techniques, Inc. v.</u>                       13
<u>Wackenhut Protective Systems, Inc</u>.,
669 F.2d 1026, 1031 (5th Cir. 1982)

<u>Kelly v. City of Albuquerque,</u>                                          9
542 F.3d 802, 813-17 (10th Cir. 2008)

**<u>Federal District Court Authority</u>**                                **<u>Pages</u>**

<u>Sampson v. Sch. Dist. Of Lancaster,</u>                              9
No. 05 Civ. 6414 (RBS) 2009 WL 1675083 at *6 (E.D. Pa. June 12, 2009)

## ARGUMENT AND CITATIONS OF AUTHORITY

A district court's order granting summary judgment is reviewed de novo "viewing all evidence, and drawing all reasonable inferences in favor of the non-moving party." Brown v. Wrigley Manufacturing Company, LLC, No. 21-11328, 2023 WL 2386500 at *3 (11th Cir. Mar. 7, 2023). When reviewing the summary judgment record, a district court must view the evidence in the light most favorable to the non-moving party. Id.

### A.    Prima Facie Case for "Failure to Promote" Claims

The resolution of Rosado's discrimination claims involving the five "failure to promote" decisions raised in this appeal may be dependent on the proper standard for a prima facie case. However, the law is not entirely clear on that standard as it applies to "failure to promote" cases. To be sure, the standard for a prima face case in "failure to promote" cases was clarified over twenty five years ago in Walker v. Mortham, 158 F.3d 1177 (11th Cir. 1998). In Walker the Eleventh Circuit panel comprehensively discussed the circuit split regarding what is required at the prima facie stage for a failure to promote claim. There, the Court concluded based on "the earliest case principal" that the Court should follow Crawford v. Western Electric Co. Inc., 614 F.2d 1300, 1315 (5th Cir. 1980), which required plaintiffs only to show that the position was filled by someone outside of their protective class and did not require plaintiff to establish that she is more

4

qualified than the successful selectee nor that she had equal qualifications. Id. at 1192. See also Voudy v. Sheriff of Broward Cty., 701 F. App'x 865, 869 (11th Cir. 2017) (citing Walker, 158 F.3d at 1186).

The Navy has not attempted to set forth the proper standard for a prima facie case in failure to promote cases. Rather than assert the standard for failure to promote cases, the Navy has instead described the general standard applicable to most other disparate treatment cases not involving failure to promote or failure to hire claims. See Navy's brief at 38. However, the Navy has not directly suggested that the standard set for in Walker v. Mortham, supra, is not applicable here. Rather, the Navy's approach in its brief is to overly emphasize the "similarly situated comparator" issue to the extent of either ignoring the holding in Walker v. Mortham or perhaps suggesting that Walker v. Mortham be overruled without directly addressing the point.

Of the primary cases relied upon by the Navy in it's brief, the only one involving a failure to promote claim was Malone v. U.S. Att'y Gen., 858 F. App'x 296 (11th Cir. 2021). However, Malone did not mention Walker and it utilized the general prima facie standard applicable to most disparate treatment claims other then failure to promote cases, to wit: (1) he was a member of a protected class; (2) his employer subjected him to an adverse employment action; (3) he was qualified to do the job; and (4) his employer treated him less favorably than similarly

5

situated individuals outside his protected class. Citing <u>Lewis v. City of Union City</u>, 934 F.3d 1169, 1185 (11th Cir. 2019).

Nevertheless, not long after <u>Walker v. Mortham</u> was decided, there were a number of decisions apparently reverting to the standard that <u>Walker</u> held was improper. It appears that these cases originated shortly after the <u>Walker</u> decision, but can be traced to decisions preceding <u>Walker</u>. For example, in <u>Taylor v. Runyon</u>, 175 F. 3d 861, 866 (11th Cir. 1999) the court stated "Taylor must prove: (1) that she is a member of a protected minority; (2) that she was qualified and applied for the promotion; (3) that she was rejected despite these qualifications; and (4) other equally or less qualified employees who are not members of the protected minority were promoted." Citing <u>Wu v. Thomas</u>, 847 F.2d 1480, 1483 (11th Cir. 1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 156 (1989). A similar decision in <u>Lee v. GTE Fla,. Inc</u>., 226 F. 3d 1249, 1253 (11th Cir. 2000) cited <u>Taylor v. Runyon</u>, <u>supra</u>, for the same proposition and <u>Wilson v. B/E Aerospace, Inc.</u> 376 F. 3d 1079, 1087 (11th Cir. 2004) cited to <u>Lee v. GTE Florida, Inc.</u>, <u>supra</u>, for a similar prima facie standard.

Rosado suggests that <u>Walker v. Mortham</u> is still the law in this circuit and that the proper standard for a prima facie case in "failure to promote" cases does not "require a plaintiff to establish that she is more qualified that the successful promotee," nor does it require "a plaintiff to prove equal qualifications at the prima

6

facie stage." Walker v. Mortham at 1192. Moreover, as stated in Walker, "the Supreme Court cases of Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and Patterson v. McLean Credit Union, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) have explicitly addressed the issue of relative qualifications in a way that accords with the Crawford standard." Id. at 1189.

In any event, the issue of the appropriate standard may not be necessary to a resolution of this appeal because Rosado contends that he properly established a prima facie case under either of the standards analyzed in Walker. Rosado presented argument in his initial brief demonstrating why he was at least equally or better qualified than the selectees. See Rosado initial brief at 42-47.

**B.    Rosado's Temporary Promotion Claim**

One of Rosado's claims did not involve his application for a position where the navy was seeking applicants for an open billet or permanent position. This claim, as alleged in counts IV, IX, XIV and XVII of the Amended Complaint, involved Mr. Rosado having been selected for a temporary promotion by his immediate supervisor and having worked in that position without being properly compensated.

Since this position was offered to Mr. Rosado by his immediate supervisor without any requirement for an application or formal competitive or selection

7

process, the Navy has suggested that due to the lack of comparators for this type of temporary promotion, Rosado is precluded from establishing a prima facie case of discrimination. However, Rosado submits there is other evidence of discrimination from which the factfinder could infer a discriminatory and/or a retaliatory motive. The testimony of Rosado's immediate supervisor, Wyatt Pruitt, is inconsistent with that of Rosado's second level supervisor, Andrea Freeman. See Rosado initial brief at 29-30, 33 and 48. In an effort to harmonize the actions of both, Freeman essentially claims that Pruitt must have misunderstood her direction when offering Rosado the temporary promotion. Moreover, Rosado had been in the temporary job for several weeks when he attempted to resolve the pay issue by attending a mediation of his EEO complaint asserting this claim. It is unlikely that Freeman, as the command information officer, would have been unaware that Rosado was improperly working in this higher level position for a several week period before the mediation conference. Even if such a reasonable inference could not properly be made, certainly when Rosado attempted to mediate his EEO complaint (and thereby engaged in protected activity) Freeman was not only aware he had been performing the job without compensation, but she agreed to formalize the temporary promotion so that he could be compensated if he would dismiss his EEO complaint. Rosado declined to accept Freeman's offer to formalize the temporary promotion because he was already working in the position. Rosado did not agree to

8

dismiss his EEO complaint because he believed he had already received the promotion from his immediate supervisor, Pruitt, and it was just a matter of him being paid for work he had already performed. Despite the inability to resolve his EEO complaint, there was no explanation offered by the Navy regarding why Freeman did not take the necessary steps to compensate Rosado for the work he had already performed. At a bare minimum, Rosado has established a prima facie case of retaliation for this failure to compensate him. He engaged in the protected act of trying to mediate his EEO complaint with Freeman in September, 2015. (Doc. No. 37-1 at 24, Freeman Decl. ¶ 51). See <u>Filius v. Potter</u>, 176 F. App'x 8, 11-12 (11th Cir. 2006) (treating mediation as protected activity in reference to retaliatory action). As stated in <u>Filius</u>, "since only one day had elapsed between his mediation and Filius's change of employment status, Filius established a causal connection, and, therefore established a <u>prima facie</u> case of retaliation. See also <u>Kelley v. City of Albuquerque</u>, 542 F.3d 802, 813-17 (10th Cir. 2008) (defense attorney's participation in EEOC mediation is protected activity, under "plain language of § 2000e-3(a)") and <u>Sampson v. Sch. Dist. of Lancaster</u>, No. 05 Civ. 6414 (RBS), 2009 WL 1675083, at *6 (E.D. Pa. June 12, 2009) ("There is no dispute that Plaintiff's filing of the EEOC charge and subsequent mediation were protected activities."). Contemporaneously with Rosado declining to settle his EEO claim in return for Freeman's agreement to formalize Rosado's temporary

9

promotion, Freeman decided not to seek the necessary authorization to compensate Rosado. Thus, it appears that the temporal proximity of the protected activity to the discriminatory act in this instance is virtually immediate and establishes a prima facie case of retaliation. Moreover, there is no explanation from the Navy regarding the reason why his temporary promotion could not have been formalized by Freeman apart from Rosado's decision not to settle his EEO complaint at mediation.

## C.    Rosado's Other Claims of Retaliation

In addition to his temporary promotion claim, each of the other claims asserted by Rosado arising from the failure to select him for various other positions included a retaliation component. As set forth in his initial brief, counts VI through X of the Amended Complaint allege retaliation in violation of Title VII and counts XVI through XVIII of the Amended Complaint allege retaliation in violation of the ADEA.

These other claims of retaliation involved the selection of five individuals who were substantially younger than Rosado and who were outside of his protected class with regard to race and national origin. Rosado agrees that the temporal proximity of his protected activity to the selection of two of these individuals is not sufficiently close, in and of itself, to establish a prima facie case.

One of these selections was the selection of Anthony Joshua for the Supervisory IT Specialist position, GS-2200-13, that was made in January, 2018.

10

However, there is other evidence in the record as described in Rosado's initial brief from which an inference of retaliation could be made. See Rosado initial brief at 30-32. Perhaps the most significant evidence supporting this claim is the fact that Freeman inserted a four year degree requirement into the selection process only after Rosado applied for the position and the job posting had closed. This requirement inserted after the 11th hour, essentially foreclosed Rosado from being selected despite his other qualifications because Mr. Rosado had a two year degree while Joshua had a four year degree. See Rosado initial brief at 31. Freeman confirmed in her EEO declaration that "Based on the Cybersecurity Workforce requirements, the biggest difference between Rosado and Joshua is that Rosado has an associate degree and Joshua has a bachelor degree." (Doc. 47-17 at 8). This evidence is in addition to other evidence of retaliation consisting of the statement previously made to Rosado by Freeman in 2015 referenced infra that Freeman is not afraid of EEO or the union and to "bring it on."

The only other selection where sufficient temporal proximity between the protected activity and the adverse employment action was lacking in and of itself to establish a prima facie case is the selection of Lewis Fleming alleged in counts I, VI and XI of the Amended Complaint. Since this selection decision was not made by Freeman, Rosado agrees that the other evidence of retaliation asserted in his brief is not applicable to this selection.

11

All of the three other selections, including the earlier selection of Joshua were sufficiently close to Rosado's protected activity to establish a prima facie case of retaliation. For example, the job offer to Ravenscroft was made on December 19, 2014. This is just nine days after Rosado filed his EEO complaint on December 10, 2014. See Rosado initial brief at 26-28.

In addition, the first selection of Anthony Joshua and the selection of Gregory Snead occurred on March 11, 2015. However, as acknowledged in the Navy's initial brief, the division director decided not to refer Rosado's resume to the selection committee in late December 2014 or early January 2015, just a few weeks after Rosado had filed his second EEO complaint." See Navy initial brief at 55-56. And as acknowledged in the Navy's brief, Freeman admitted telling her staff "I'm not afraid of EEO" on April 1, 2015. Id. At 56. Although it is correct that the division director did not specifically identify Rosado's prior EEO activity by number or specific filing date, he did state in his declaration "[a]s Mr. Rosado's co-worker in CIO3, between November 2007 and October 2014, I was aware—as was practically everyone in CIO3, if not the entire CIO—that Mr. Rosado had alleged that he had been discriminated against, based on being Hispanic . . ." Although the source of the division director's knowledge of Rosado's prior protected activity is not made explicit, there are only two reasonable inferences in that regard. One is that Rosado was open and transparent regarding his EEO activity to the point

12

where the entire organization was aware of it, or two, this type if information is discussed among employees in CIO to the extent where it has become common knowledge. Here, in view of this testimony, a reasonable inference can be made that the division director was aware of Rosado's most recent EEO activity as well. Moreover, the Navy's suggestion in it's brief that Freeman's statement regarding not being afraid of EEO was actually an "invitation" to Rosado to file another EEO complaint strains credulity. Mr. Rosado was the only employee in Freeman's 30 year history with the agency to name her as the responsible management official in an EEO complaint. The suggestion that her comments were an invitation to him to file another such complaint makes no sense and in any event as stated in Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc., 669 F. 2d 1026, 1031 (5th Cir. 1982), "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the Courts should deny summary judgement." Here, reasonable minds might differ.

**D.    Rosado Has Not abandoned His Other claims of Retaliation**

The Navy suggests that Rosado has abandoned his claims of retaliation on all claims other than the temporary promotion claim. This in not the case. Rosado asserted that the District Court erred in evaluating the evidence of retaliation in general. Rosado pointed to Freeman's comments during a group meeting as evidence of retaliation that was not properly considered with regard

13

to all of Rosado's retaliation claims. These comments were made on or about April 1, 2015. Freeman stated at that time "If you don't want to be here, the door is open. I'm tired of people walking on egg shells, I'm not going backwards, we are moving forward. I'm not afraid of EEO or the union, bring it on." (Doc. no. 5-6, Am. Compl. ¶16).

Rosado contends that the above statements by Freeman are relevant to all of his retaliation claims and not just one in particular. There is no question that Freeman was aware of Rosado's prior EEO activity. There is also no dispute that Rosado was the only employee in Freeman's 30 year employment history with the Navy that had ever filed EEO complaints naming her as the responsible management official. (Doc. 35-1 at 16 and Rosado initial brief at 14). Rosado argued on page 51 of his initial brief that these comments, in context, could support an inference of retaliation. Rosado further argued that the evidence warrants a finding that "Rosado's retaliation claims asserted in Counts VI through X and XVI though XVIII of the Amended Complaint should not have been resolved by summary judgment." Rosado initial brief at 51. Thus, Rosado's brief suggested that these comments by Freeman in addition to the one instance where the retaliation occurred virtually contemporaneously with the protected activity could serve as evidence to support the remainder of his claims of retaliation. See Rosado initial brief at 47-52. These statements by Freeman were alleged in the Amended

14

Complaint and were part of the evidence that Rosado contends were not properly evaluated by the District Court in its summary judgement determination.

   Wherefore, due to the foregoing reasons it is respectfully requested that the judgment of the district court be reversed and that the matter be remanded for further proceedings.

   Respectfully submitted this 29th day of March, 2023.

*/s/Archibald J. Thomas, III*
Law Offices of Archibald J. Thomas, III, P.A.
1326 3rd Street South, Suite 2
Jacksonville Beach, FL 32250
(904) 674-2222
Email: thomas@job-rights.com
*Counsel for Appellant-Plaintiff*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

This brief, which contains 2834 countable words under 11th Cir. R. 32-4, complies with Fed. R. App. P 32(a)(7)(B).

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 17th day of August, 2023, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participant listed below:

Sean Siekkinen,
Assistant United States Attorney
United States Attorney's Office
400 N. Tampa Street, Suite 3200
Tampa, FL 33602
sean.siekkinen@usdoj.gov

*/s/Archibald J. Thomas, III*
Law Offices of Archibald J. Thomas, III, P.A.
1326 3rd Street South, Suite 2
Jacksonville Beach, FL 32250
(904) 674-2222
Email: thomaslawfirm1@gmail.com
*Counsel for Appellant-Plaintiff*